## Bank Commissioners vs. The Bank of Brest.

First Circuit. Where it appeared from the statements in the bill, that a bank commissioner examined into the affairs of the bank of Brest on the second day of August, 1838, and the specie then on hand was $9,754 92, and that another examination of the affairs of the bank was made on the eleventh day of the same month, and it then had but $138 89, and there was no correspondent decrease of liabilities; and about $44,000 of the issues of the bank were in the hands of agents without sufficient sureties; and that of the assets there were $5,000 in uncurrent notes; and that $25,000 of post notes were issued on the fourth day of the same month of August, without being endorsed by a bank commissioner; and the bill charged the bank to be insolvent; and the answer admitted the facts set forth in the bill, but denied the insolvency; it was held that the bank was insolvent within the meaning of the law, and that a proper case was made for the appointment of a receiver to take charge of its effects.

B'k Com'rs
vs.
Bank of
Brest.

A transfer, by way of security, of a portion of the effects of a moneyed corporation, for the purpose of carrying on the concern, is within the powers of the directors; and a corporation which has no particular mode pointed out for closing its concerns, may make an assignment on obtaining the assent of the stockholders.

If a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights.

The directors of a moneyed corporation, like that of the bank of Brest, have no power to make an assignment, without being authorized so to do by the stockholders.

The directors are trustees of the stockholders for the purpose of carrying on the business of the corporation, and not for the purpose of winding it up and destroying its existence.

The statute prescribes the mode in which the affairs of banking associations, established under the general banking law of this state, shall be wound up, in case of insolvency, and this forms a part of the security to the public, and is one of the conditions upon which they take their chartered powers.

An assignment made by the directors of the bank of Brest, to a trustee, for the benefit of creditors, with a view to evade the provisions of the statute, was held to be against the policy of the law, and void.

This was a motion for the appointment of a receiver.

The bill alledged that the bank of Brest had become a body corporate and politic, under and by virtue of the provisions of an act entitled "An act to organize and regulate banking associations," approved March 15, 1837; that it commenced the usual business of banking, on or about the 30th day of September, 1838, and had continued to do banking business up to the time of the filing of the bill; that, January 10th, 1838, it became subject to the provisions of an act entitled "An act to organize and regulate banking associations," approved December 30, 1837; that Alpheus Felch, one of the bank commis-

sioners, in the performance of his official duties, examined into the affairs and condition of the bank, on the second, and again on the eleventh days of August, 1838; that from such examinations, it appeared that between the second and eleventh days of August, the specie of the bank had been reduced from the sum of $9,754 92, which was actually on hand on the second day of August, to the sum of $138 89, which was all that remained in the bank on the eleventh day of the same month, and that no correspondent decrease of the liabilities of the bank had been made; that about $44,000 of the issues of the bank were in the hands of Lyman A. Spalding, of Lockport, state of New York, and other persons, agents of the bank, without sufficient security being given therefor; that of the assets of the bank there were $5,000 of uncurrent notes of the "River Raisin and Lake Erie railroad company;" that post notes to the amount of $25,000 were issued, August 4, 1838, payable at the Phœnix bank, of the city of New York, one year from date, bearing an interest of seven per cent; that all of said post notes were issued without having been endorsed by a bank commissioner, in violation of the forty-first section of the "Act to amend an act entitled 'An act to organize and regulate banking associations, and for other purposes,' approved December 30, 1837."

That said bank had failed to comply with section 36 of the last mentioned act, in furnishing the securities to the amount required.

The bill charged the bank to be insolvent, and prayed for an injunction, and for the appointment of a receiver to take charge of its property and effects; also, for a decree to deprive said bank of its corporate privileges, and a dissolution of the corporation.

The bill was filed and injunction issued August 15, 1838; injunction and subpœna served on the 16th of the same month.

The answer admits the facts as stated in the bill, but denies that the bank was insolvent, and insisted that its assets, if no unexpected loss occurred in collecting them, would fully discharge all its liabilities.

First Circuit.

B'k Com'rs
vs.
Bank of
Brest.

The answer further stated, that from various difficulties and disappointments, and more particularly from the impossibility, under the circumstances of the case, of perfecting its securities, its president, directors and company concluded to close its affairs, and on the fourteenth day of August, 1838, passed the following preamble and resolution: "Whereas, from various disappointments in the receipt of money, and from other unforeseen and embarrassing circumstances, it is impossible for the bank of Brest to redeem, upon demand, all its notes and bills in circulation, and to pay its other debts; and whereas, unexpected difficulties have arisen in perfecting its securities required by law for the above bank, and the further transaction of its business is exceedingly inconvenient; therefore, resolved, that all the choses in action, and personal and real estate, and all the effects and assets whatever of said bank, be assigned and transferred to Alexander D. Frazer, Esq., of Detroit, and Theodore Romeyn, Esq., or either of them, (if one shall decline,) in trust, for the purpose of paying all the debts of said bank, as soon as may be, according to the statute of the state; that a deed of assignment be forthwith prepared in pursuance of the above resolution, and that the cashier affix thereto, the seal of the bank, and that the same, when so sealed by the said cashier, shall be considered as the deed of the bank."

That Theodore Romeyn having declined the trust, the bank did, on the fifteenth day of August, execute to Alexander D. Frazer, Esq., an assignment of all its credits and effects, which assignment was in pursuance of the foregoing resolution, and was executed and delivered prior to the issuing of the injunction, and with no knowledge or notice thereof. That said trust was accepted by said Frazer, and that he, by virtue of said assignment, took possession of all the property and effects of said bank, and removed the same previous to the service of said injunction. That the assignment was executed in good faith, &c.

P. MOREY, attorney general, in support of the motion,

1. The directors of such a corporation as the bank of Brest, may assign property to pay a debt, or for any other lawful purpose which will promote the objects contemplated by the charter; but they cannot make an assignment merely for the purpose of closing its existence, as that would be the exercise of a power not delegated by law, and would, in effect, accomplish a surrender of their chartered rights to another power than that by whom their privileges and franchises were bestowed. *See Session Laws of* 1838, *page* 31, *section* 17, of the " act to amend the act to organize and regulate banking associations, and for other purposes;" where the powers of directors are limited to such acts as " appertain to the business of a banking association."

2. The " act to create a fund for the benefit of the creditors of certain moneyed corporations," provides the mode in which all corporations subject thereto, shall be proceeded against on their becoming insolvent, or for any violation of law. It is made the imperative duty of a bank commissioner, immediately upon the ascertainment of any violation of law or insolvency, to apply to the court of chancery, upon bill or petition, for an injunction; and it is declared that the same proceedings *shall, in all respects*, be had, as in cases of application by the attorney general. (*See session laws of* 1835–6, *page* 162, *section* 18.) Section 9, page 159, of the same law, further provides, when a corporation shall become insolvent, and shall have been proceeded against as above, " it shall be the duty of the court of chancery, immediately after a final dividend shall have been made, to cause an order prescribing certain rules to be entered in its minutes," thus clearly anticipating and intending, that what was imperatively enjoined as an official duty upon the bank commissioner, would be performed in good faith, and that full force and effect would be given by the court of chancery, to what is thus required.

All of this, an assignment such as is now presented, and relied upon to defeat the motion, would prevent. It would render the law nugatory, and place the bank commissioner in the strange predicament of being imperatively required by statute

First Circuit.

B'k Com'rs
vs.
Bank of
Brest.

to perform an act in the furtherance and promotion of the public interests, through the medium of the court of chancery, and yet left powerless to enforce what was there enjoined; and subject too to be defeated by an act itself a fraud upon individual rights, and a clear violation of the spirit and intention of the law.

T. Romeyn, contra.

I. The act of 21st June, 1837, entitled " An act to provide for proceedings in chancery against corporations, and for other purposes," does not render it *imperative* upon the chancellor to issue an injunction and appoint a receiver.

1. The words of the statute are, that in certain specified cases the chancellor *may* grant an injunction and *may* appoint a receiver. These words imply a *discretionary* power.

2. This statute, so far as it alters the common law, should be *strictly* construed. 1 *Kent's Com.*, 433.

3. The bestowal of jurisdiction upon the chancery is an infringing upon the common law, for by it the control of corporations was intrusted to courts of law, and chancery could not interfere. 2 *John. Ch. Rep.*, 371; *Id.*, 389; *Hopk. R.*, 354.

4. Again. The granting of an injunction is *always discretionary.* 2 *John. Ch. Rep.*, 202, 379. So is the appointment of a receiver. 1 *John. Ch. Rep.*, 57.

II. The present case does not require the appointment of a receiver.

1. The bank has made an assignment of all its effects.

2. The act of assignment is legal.

*First.* It will not be pretended but that the bank might close its affairs when it pleased, by a surrender of its franchises. This is incident to every corporation. 1 *Blk. Com.*, 485. An assignment is a mutual surrender. 19 *J. R.*, 456; 6 *Cow.*, 220.

*Second.* It had a right to make such surrender, or close its affairs in this particular way. 4 *Mass. Rep.*, 293; 2 *Kent*, 227; 1 *Blk.*, 475; 6 *Cow.*, 219; 3 *Wend.*, 1.

First Circuit.

B'k Com'rs
vs.
Bank of
Brest.

*Third.* This particular assignment is valid in all its provisions. If *any* are legal, court will not interfere. 5 *Paige,* 318.

3. While this assignment subsists, the court may not remove trustee unless under special circumstances of irresponsibility, neglect or abuse of trust, &c., which are not here pretended to exist. 6 *Johns. Ch. Rep.,* 161; *Hopk. Rep.,* 429; 1 *Paige,* 17; 2 *Paige,* 438.

4. While the assignment remains in force, and the trustee acts under it, there is no duty for a receiver to perfom.

*First,* The assignee of the bank has already in his possession and control all the property which would vest in the receiver, by the fifth section of the act under which the court exercises jurisdiction.

*Second,* The securities which have been given under the sixth section of the act amending the general banking law, are given to the auditor general, for the use of the state, and cannot be transferred to the receiver.

THE CHANCELLOR. From the facts which appear in the bill and answer, in this case, there can be no doubt that the bank of Brest is insolvent within the meaning of the law, and that a proper case is made for the appointment of a receiver to take charge of its effects.

The question as to the validity of the assignment, is not regularly before the court; the assignee not being a party, but both parties and the assignee are anxious to obtain an expression of opinion upon this point.

The assignment set up in the answer, is an assignment by the directors of all the estate, real and personal, and assets and effects of the bank, to a trustee. A transfer by way of security of a portion of its effects for the purpose of carrying on the concern is within the power of the directors; and a corporation which has no particular mode pointed out for closing its concerns, may make an assignment on obtaining the assent of the stockholders. If this assignment is valid, it is no doubt a surrender of the charter; for if a corporation suffers acts to be done which destroy the end and object for which it

First Circuit.

B'k Com'rs
vs.
Bank of
Brest.

was instituted, it is equivalent to a surrender of its rights. *Slee* vs. *Bloom*, 19 *Johns. Rep.*, 456; *the People* vs. *the Bank of Hudson*, 6 *Cowen Rep.*, 219.

The directors in making the assignment in question, without authority from the stockholders have exceeded their powers.

They are made trustees of the stockholders, for the purpose of carrying on the business of the corporation, and not for the purpose of winding it up and destroying its existence. *Angel and Ames on Corp.*, 507; 3 *Dess.*, 557.

The statute prescribes the manner in which the affairs of this class of corporations shall be wound up in case of insolvency. This forms a part of the security to the public, and is one of the conditions upon which they take their chartered powers. An assignment made manifestly with a view to evade the provisions of the statute, as this seems to have been, is against the policy of the law, and cannot be sustained.

Motion granted.