THOMAS W. JOHNSON, JR., Executor of George W. Todd, deceased, vs. JAMES CRANE HIGGINS and DANIEL W. CORBIT, Executors of Anthony Higgins, deceased.

1. EXECUTORS AND ADMINISTRATORS—PROBATE AFFIDAVIT OF CLAIM PRODUCED ON MOTION FOR NONSUIT AFTER CLOSE OF PLAINTIFF'S CASE NOT TOO LATE.

The affidavit which under *Rev. Code* 1915, § 3376, must be produced before an executor may pay a claim against decedent, and for failure to produce which in action against executor plaintiff shall, on motion, be nonsuited, may be produced, on the motion being made, though plaintiff had closed his case.

2. CONTRACTS—OF ATTORNEY WITH LAYMAN TO PROCURE EVIDENCE FOR PART OF CONTINGENT FEE AGAINST PUBLIC POLICY.

An agreement of attorney to share his contingent fees with one not an attorney for looking after and procuring evidence is against public policy.

(<em>January</em> 30, 1917.)

CONRAD and HEISEL, J. J., sitting.
*Daniel O. Hastings* and *Clarence A. Southerland* for plaintiff.
*William S. Hilles* and *David J. Reinhardt* for defendants.
Superior Court for New Castle County, January Term, 1917.

SUMMONS CASE, No. 40, September Term, 1915.
Action by Thomas W. Johnson, Jr., executor of George W. Todd, deceased, against James Crane Higgins and Daniel W. Corbit, executors of Anthony Higgins, deceased. Directed verdict for defendants.

The plaintiff introduced evidence to show that George W. Todd, deceased, in his lifetime, was a bondholder of the Diamond State Steel Company; that as such he was interested, along with other bondholders of said company, as one of the plaintiffs, in a

claim or contemplated suit of said company against E. B. Smith and Co.; that Anthony Higgins, deceased, in his lieftime, was a lawyer, with offices in the city of Wilmington; that as such, his professional services were procured by Todd, to undertake the prosecution of said suit upon a contingent compensation basis of forty per cent. of any amount that might be recovered in said suit; that there was an immense amount of outside work to be done in gathering of evidence, etc., in preparation for the trial; that all of such work was done by Todd, who practically devoted all of his time for a long period to such work; that Higgins agreed that Todd, who was not a lawyer, should receive, in addition to the sum to which he would be entitled as one of the plaintiffs in the action, an amount equal to twenty per cent. of the counsel fee in the case; that the action was successfully prosecuted and that the amount actually paid to counsel (there being two lawyers associated with Mr. Higgins in the case) was thirty thousand dollars, of which Todd was to receive twenty per cent.; that nothing was ever paid to the estate of George W. Todd by the estate of Anthony Higgins.

Plaintiff rested, and counsel for defendants thereupon moved for a nonsuit, for the reason that no probated demand had been made upon the defendants as required by *Rev. Code* 1915, § 3376, which provides:

"Before the executor, or administrator, shall pay any debt against the deceased, the person holding the same shall make affidavit that nothing has been paid or delivered towards satisfaction of said debt, except what is mentioned, and that the sum, demanded is justly and truly due. * * * If affidavit, as above required, be not produced in an action against an executor, or administrator, for a debt against the deceased, the plaintiff shall, upon motion, be nonsuited; and if such action shall have been brought without previously exhibiting to the defendant an affidavit in due form, the plaintiff shall not recover any costs."

—citing *Langrell v. Wright, Adm'r,* 2 *Boyce,* 311, 80 *Atl.* 235.

Whereupon the required affidavit was produced.

It was objected that, plaintiff having closed his case, the affidavit was produced too late.

CONRAD, J.:—[1] The court is satisfied that it can be produced at this time. In the case of *Beeson's Ex'r v. Beeson's Adm'r,* 1 *Har.* 106, it was held:

"In the progress of the cause and after the plaintiff had closed his case the defendants' counsel moved a nonsuit for want of a probate. The plaintiff produced a probate which he had inadvertently neglected to offer while laying his case before the jury. The defendant insisted it was too late, but the court received the probate and refused the nonsuit. A probate is no part of the evidence and if produced when demanded in any stage of the cause it is sufficient."

Counsel for defendants then moved for a nonsuit on the ground that the contract alleged between Todd and Higgins was null and void, being against public policy; that the line is drawn between the payment of a layman by a lawyer for services in connection with the preparation of a case, of a certain sum, and a sum contingent upon the amount recovered.

Counsel for plaintiff contended that although there would be no implied contract by reason of the services alleged to have been performed, as in an ordinary case, yet an express contract between a layman, who was interested as a party to the suit, and the counsel who represented him and others in the case, for a certain percentage of the contingent fee of counsel as compensation for services in procuring evidence, etc., was valid, and recovery could be had thereon.

CONRAD, J., delivering the opinion of the court:

The plaintiff rests his case upon an alleged contract claimed to have been made by Anthony Higgins, an attorney at law in this county, with one George W. Todd, not an attorney, to pay to the latter a certain percentage of the counsel fees to be received by Higgins, contingent upon the recovery of a verdict in a suit then pending against the firm of E. B. Smith and Co.; the percentage to to paid to Todd being compensation for procuring evidence, examining records and minutes, etc., for use in the above suit.

[2] Defendants' counsel moves for a nonsuit on the ground that the contract, if proved, was null and void, being against public policy.

An old English authority cites the following instances of the application of the doctrine of contracts in contravention of public policy: Marriage brokerage bonds, contracts in restraint of trade, contracts by expectant heirs, or in consideration of illicit

cohabitation, or such contracts as may injuriously affect the administration of public justice.

The case at bar is claimed to come under the last-named head.

The Supreme Court of Nebraska, in *Langdon v. Conlin*, 67 *Neb.* 243, 93 *N. W.* 389, 60 *L. R. A.* 429, 108 *Am. St. Rep.* 643, 2 *Ann. Cas.* 834, lays down the law very clearly, as follows:

"'A contract between an attorney at law and one who is not such an attorney, by which the latter agrees to procure the employment of the former by third persons for the prosecution of suits in courts of record, and also to assist in looking after and procuring witnesses whose testimony is to be used in the cases, in consideration of a share of the fees which the attorney shall receive for his services, is against public policy, and void."

The Supreme Court of New York, in *Lyon v. Hussey*, 82 *Hun*, 15, 31 *N. Y. Supp.* 281, upholds the same doctrine, as shown by the following extract from the court's opinion:

"It is clear that such a contract is against public policy. The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice."

The courts of Kentucky and of Michigan are in accord with the same doctrine, and in fact all the courts where the subject has been discussed agree that a contract between an attorney and one not an attorney, to divide contingent fees to be received by an attorney in a suit, is repugnant to every instinct of propriety and justice, and should be regarded as immoral, illegal and void.

We are clearly of opinion that the contract relied upon in the case at bar is null and void, being against public policy.

The motion for a nonsuit is granted.

*Mr. Hastings*:—If your honors please, the plaintiff declines to accept a nonsuit.

CONRAD, J.:—Gentlemen of the jury, for the reasons stated in granting the motion for a nonsuit, we instruct you to return a verdict for the defendants.

Verdict for defendants.